LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Rebecca A. Peterson (241858)
100 Washington Ave S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GERALD DELOSS** and **STAN ZAKINOV,** individually and on behalf of all others similarly situated<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**BEYOND MEAT, INC.,**<br><br>**DEFENDANTS.** | ) Case No.   2:22-cv-4405<br>)<br>) **CLASS ACTION COMPLAINT**<br>)<br>) (1) BREACH OF EXPRESS WARRANTY;<br>) (2) BREACH OF IMPLIED WARRANTY;<br>) (3) FRAUDULENT<br>) MISREPRESENTATION;<br>) (4) FRAUD BY OMISSION;<br>) (5) NEGLIGENT MISREPRESENTATION;<br>) (6) UNJUST ENRICHMENT;<br>) (7) VIOLATIONS OF CALIFORNIA<br>) LEGAL REMEDIES ACT;<br>) (8) VIOLATIONS OF THE CALIFORNIA<br>) FALSE ADVERTISING LAW;<br>) (9) VIOLATIONS OF CALIFORNIA<br>) UNFAIR COMPETITION LAW;<br>) (10) VIOLATIONS OF ILLINOIS<br>) CONSUMER FRAUD AND DECEPTIVE<br>) BUSINESS PRACTICES ACT. |

**JURY TRIAL DEMANDED**

1

## INTRODUCTION

1.      Plaintiffs Gerald DeLoss and Stan Zakinov, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Beyond Meat, Inc. ("Beyond Meat") for its negligent, reckless, and/or intentional practice of misrepresenting the content, quality, and benefits of Beyond Meat products ("Products") and omitting the presence of synthetic ingredients on the labels, packaging, and advertising of these Products sold throughout the United States, including this District. Plaintiffs served on Beyond Meat a California Consumer Legal Remedies Act (CLRA) letter on June 22, 2022, and currently bring this action on behalf of the proposed Class and Subclasses (as defined below) solely for injunctive relief under the CLRA, restitution under California Unfair Competition Law, and for damages and equitable remedies for the remainder of the claims for themselves(s) and members of the Class. If no corrective action is taken by Beyond Meat within the statutory period, Plaintiff will amend the Complaint to seek further remedies under the CLRA. Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel and, as to all other matters, upon information and belief. Plaintiffs believe that a reasonable opportunity for discovery will reveal substantial evidentiary support for the allegations set forth herein.

# PARTIES

2.    Plaintiff Gerald DeLoss is a resident of Highland Park, Illinois, and purchased the Products for his personal use. Plaintiff DeLoss purchased Beyond Meat Products including Beyond Burger Plant-Based Patties and Cookout Classic Plant-Based Burger Patties. Plaintiff DeLoss purchased the Products from the grocery stores Jewel, Whole Foods, and Target in Highland Park, Illinois during the Class Period (as defined below). Prior to purchasing the Products, Plaintiff DeLoss saw Beyond Meat's claims on the packaging including those relating to protein content, "healthy," "organic," and "natural," which he relied on in deciding to purchase the Products. During that time, based on Beyond Meat's material omissions and false and misleading claims, representations, advertisements, and any other marketing by Beyond Meat, Plaintiff DeLoss was unaware that the Products did not contain the quantity or quality of protein advertised, the proteins advertised did not have the advertised health benefits, and the Products did not include only organic materials. Plaintiff DeLoss would not have purchased the Products, or he would not have paid as much for the Products if that information was fully disclosed. Plaintiff DeLoss was injured by purchasing the Products whose value was less than what he paid for based on the

misrepresentations of the content, quality, and benefits of protein in the Products, and the presence of inorganic ingredients.

3.    Plaintiff Stan Zakinov is a resident of Cypress, Texas. While residing in San Diego, California, he purchased Beyond Burger, Meatballs, and Ground Beef from Smart and Final, Vons, and Sprouts between January 2019 and November 2021 in California. Plaintiff Zakinov relied on the label on Beyond Meat Products regarding the protein content and quality. Plaintiff Zakinov also relied on the marketing and packaging that the Beyond Meat Product Plaintiff Zakinov was all natural, organic, and healthy, and believed they were high quality products. During that time, based on Beyond Meat's material omissions and false and misleading claims, representations, advertisements, and any other marketing by Beyond Meat, Mr. Zakinov was unaware that the Products did not contain the quantity or quality of protein advertised, did not have the advertised health benefits, and the product contained artificial, synthetic materials. Plaintiff Zakinov would not have purchased the Products, or he would not have paid as much for the Products if that information was fully disclosed. Plaintiff Zakinov was injured when he purchased the Products which have less value than what he paid for based on the misrepresentations of the content, quality, and benefits of protein in the Products, and the presence of inorganic ingredients.

4.   As a result of Beyond Meat's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they purchased the Products that did not deliver what was promised. They purchased the Products based on the assumption and understanding that the labeling of the Products was accurate and that it provided the content and quality of protein as advertised and contained only organic ingredients. Plaintiffs would not have paid as much for the Products had they known that the Beyond Meat Products did not contain the advertised level and quality of protein or did not contain only all natural and organic ingredients. Further, Plaintiffs desire to purchase these Products in the future, but only if they can be assured that the Products actually contain the advertised %DV of protein, and are made from all-natural ingredients as advertised, and do not contain artificial and/or synthetic ingredients and/or any other ingredients or contaminants that do not conform to the packaging claims. Should Plaintiffs encounter Beyond Meat Products in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Products.

5.   Defendant Beyond Meat, Inc. was founded in 2009 and is incorporated in Delaware. It has its headquarters at 1325 East El Segundo Boulevard., El Segundo, California, 90245.

6.    Beyond Meat formulates, develops, manufactures, labels, distributes, markets, advertises, and sells Beyond Meat Products throughout the United States, including in this District, during the Class Period. The advertising, labeling, and packaging for the Beyond Meat Products, relied upon by Plaintiffs, were prepared, reviewed, and/or approved by Beyond Meat and its agents in California, and were disseminated from California by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Beyond Meat Products were designed to encourage customers to purchase the Products and misled the reasonable consumer, *i.e.,* Plaintiffs and the Class, into purchasing the Products. Beyond Meat owns, manufactures, and distributes the Beyond Meat Products, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

## **JURISDICTION AND VENUE**

7.    This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant, and

(3) the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

8.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendants reside in this district, Plaintiffs have suffered injury as a result of Beyond Meat's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Beyond Meat conducts substantial business in this District, Beyond Meat has intentionally availed itself of the laws and markets of this District, and Beyond Meat is subject to personal jurisdiction in this District.

## **FACTS**

### A.    **Background**

9.    Beyond Meat manufactures and sells meat substitute products. These Products are made primarily of plant proteins derived from peas, mung beans, fava beans, and brown rice, plant-based fats such as cocoa butter, carbohydrates such as potato starch, and other ingredients.[1]

10.    Beyond Meat holds itself out as a producer of products that contain high quantities of protein. Indeed, Beyond Meat has described its Products as "the future of protein," which the company hopes to "perfectly

---

[1] Beyond Meat (last visited June 8, 2022), https://www.beyondmeat.com/en-US/about/our-ingredients/.

7

replace animal protein with plant protein."[2] Beyond Beef Products have been prominently featured beside packaged meat in certain grocery stores.[3] Ethan Brown, founder and CEO of Beyond Meat, claims that 93 percent of people purchasing a Beyond Burger are not vegan or vegetarian,[4] and the Beyond Beef website specifically states "Part of our vision is to re-imagine the meat section [in grocery stores] as the Protein Section of the store. In this way, we can help introduce plant-based options to people where they are already purchasing other forms of protein."[5] Resultantly, Beyond Beef aggressively advertises the protein content of its Products on their packaging and in print and digital advertising.

11.    Additionally, Beyond Meat advertises its Products as nutritious options, free of GMOs and synthetic ingredients.[6] In interviews, CEO Ethan

---

[2] *Frequently Asked Questions*, Beyond Meat (last visited June 8, 2022), https://web.archive.org/web/20200617180303/https://www.beyondmeat.com/faqs/ (capturing the Beyond Meat website on June 17, 2020).

[3] *Beyond Meat is Having a Global Influence on How Brands Merchandise Vegan* Protein, LiveKindly (last visited June 8, 2022), https://www.livekindly.co/beyond-meat-having-global-influence-how-brands-merchandise-vegan-protein/.

[4] *93% of People Buying the Beyond Burger Are Meat* Eaters, LiveKindly, (last visited June 8, 2022), https://www.livekindly.co/beyond-burger-statistics-meat-eaters/.

[5]    *Products*, Beyond Meat (last visited June 8, 2022), https://web.archive.org/web/20200604185224/https://www.beyondmeat.com/products/the-beyond-burger/. (capturing the Beyond Meat website on June 4, 2020).

[6] *See, e.g.*, Anna Starostinetskaya, *Octavia Spencer Stars in Beyond Meat's First Television Commercial*, VEGNEWS (Aug. 3, 2020),

8

Brown has said that the Products contain "nothing artificial" and that the company is committed to using "no artificial ingredients."[7]

12.    The Beyond Meat Products include but are not limited to the following: Beyond Burger Plant-Based Patties, Beyond Breakfast Sausage, Beyond Meat Jerky, Beyond Sausage, Beyond Beef Crumbles, Beyond Ground Beef, Beyond Beef Mince, Beyond Chicken, and Beyond Meatballs.[8]

## B.    Beyond Meat Overstates the Products' Protein Content, Quality, and Benefits

13.    Protein is a vital part of a healthy diet and helps build and repair muscles, oxygenate red blood cells, digest food, and process other body chemicals, and regulate hormones.[9] A high-protein diet has benefits associated with building lean muscle, maintaining a healthy body weight, and curbing appetite.[10]

---

https://vegnews.com/2020/8/octavia-spencer-stars-in-beyond-meat-s-first-television-commercial.

[7] *Beyond Meat is Having a Moment*, BLOOMBERG (June 11, 2020), https://www.bloomberg.com/opinion/articles/2020-06-11/beyond-meat-bynd-ceo-ethan-brown-talks-growth-eating-trends#xj4y7vzkg; Tyler Clifford, *Beyond Meat CEO Looks to "Win Consumers" Over During Meat Supply Shortage with "Value Packs,"* CNBC (May 6, 2020), https://www.cnbc.com/2020/05/06/beyond-meat-ceo-looks-to-win-consumers-over-during-meat-shortage.html.

[8] Beyond Meat, (last visited June 8, 2022), https://www.beyondmeat.com/en-US/products/.

[9] *Why is Protein Important in Your Diet?*, Piedmont (last visited June 8, 2022), https://www.piedmont.org/living-better/why-is-protein-important-in-your-diet.

[10] *Id.*

9

14.    The Recommended Dietary Allowance of protein – the amount needed to maintain the health of 97-98% of individuals in groups according to age and gender – is 46 grams per day for women and 56 grams per day for men.[11]

15.    In addition to the importance of protein in our diets, studies have found that consuming plant-based proteins specifically has health benefits, such as reducing the risk of death from heart disease.[12] A 2019 study found that those who consumed more protein from animal-based sources in place of plant-based sources increased their risk of death from chronic disease by 23%.[13] As a result, many consumers seek out high protein foods generally, and plant-based proteins in particular.

16.    Beyond Meat holds itself out as a producer of such foods. As noted above, Beyond Meat advertises its Products as excellent sources of plant-based protein. Indeed, during the Class Period, Beyond Meat advertised

---

[11] Sandi Busch, *USDA Protein Requirements in Grams,* SFGATE (Dec. 14, 2018), https://healthyeating.sfgate.com/usda-protein-requirements-grams-8619.html.

[12] *Protein,* Physicians Committee for Responsible Medicine (last visited June 8, 2022),                                        https://www.pcrm.org/good-nutrition/nutrition-information/protein#:~:text=Protein%20deficiency%20is%20almost%20unheard,get%20more%20than%20enough%20protein.

[13] *Animal Protein Linked to Death in Those With Cancer, Diabetes, and Heart Disease,* Physicians Committee for Responsible Medicine (Apr. 12, 2019), https://www.pcrm.org/news/health-nutrition/animal-protein-linked-death-those-cancer-diabetes-and-heart-disease.

that "our products deliver greater or equal levels of protein than their animal-based counterparts."[14] The following are screenshots archived from the official Beyond Meat website.[15]

**OUR PROTEINS**

Pea · Mung Bean · Fava Bean · Brown Rice

By using a variety of plant proteins, our products deliver greater or equal levels of protein than their animal-based counterparts.

# EAT WHAT YOU LOVE™

Our plant-based meats are made with intention. By combining expert innovation with simple, non GMO ingredients, we deliver the meaty experience you crave without the compromise. Our products offer greater or equal protein levels than their animal counterparts, no cholesterol*, less saturated fat*, and no antibiotics or hormones.

*See more nutrition information HERE

---

[14] *Our Ingredients,* Beyond Meat (last visited June 8, 2020), https://web.archive.org/web/20200608112130/https://www.beyondmeat.com/about/our-ingredients/.

[15] As will be detailed *infra*, Beyond Meat appears to have eliminated from its website all references to "greater or equal levels of protein" than other meats, as well as reversed its claims about the presence of synthetic ingredients, generally around the time they were sued by two different Plaintiffs for false advertising and other related claims. *Roberts, et al., v. Beyond Meat, Inc.,* Case No. 1:22-cv-02861, ECF No. 1 (N.D. Ill. May 31, 2022); *Don Lee Farms v. Beyond Meat, Inc.,* Case No. 2:22-cv-3751, ECF No. 1 (C.D. Ca. June 2, 2022); *see also Our Ingredients,* Beyond Meat, (last visited June 8, 2022), https://web.archive.org/web/20200608112130/https://www.beyondmeat.com/about/our-ingredients/ (capturing the Beyond Meat website on June 8, 2020).

17.    Additionally, almost every Beyond Meat product advertises its protein quantity prominently on its packaging.

 

 

 

18.    The amount of protein advertised on the front of the Products' packaging is listed in the ingredients as derived from a plant-based protein,

often "Pea Protein" or "Mung Bean Protein."[16] For example, the Beyond Burger Plant-Based Patties advertise "20G of Plant Protein Per Serving."



19.    The ingredients label lists "Pea Protein" as the primary source of the advertised protein content.

**INGREDIENTS:** Water, Pea Protein†, Expeller-Pressed Canola Oil, Refined Coconut Oil, Rice Protein, Natural Flavors, Dried Yeast, Cocoa Butter, Methylcellulose, Contains 1% or less: Potato Starch, Salt, Potassium Chloride, Beet Juice Color, Apple Extract, Pomegranate Concentrate, Sunflower Lecithin, Vinegar, Lemon Juice Concentrate, Vitamins and Minerals (zinc sulfate, niacinamide [vitamin B3], pyridoxine hydrochloride [vitamin B6], cyanocobalamin [vitamin B12], calcium pantothenate).
†Peas are legumes. People with severe allergies to legumes like peanuts should be cautious when introducing pea protein into their diet because of the possibility of a pea allergy. Contains no peanuts or tree nuts.

---

[16] *See e.g.*, *Beyond Jerky Original,* Beyond Meat (last visited June 8, 2022), https://www.beyondmeat.com/en-US/products/beyond-meat-jerky?variant=original; *Beyond Beef,* Beyond Meat (last visited June 8, 2022), https://www.beyondmeat.com/en-US/products/beyond-beef?variant=ground.

20.    The nutrition label calculates that the 20 grams of (pea-derived) protein represents 40% of the Daily Value of protein.

## Nutrition Facts

2 servings per container
Serving size    **1 Patty (113g)**

|  | Per serving | Per container |
|---|---|---|
| **Calories** | **230** | **450** |

|  | | % DV* | | % DV* |
|---|---|---|---|---|
| **Total Fat** | 14g | **18%** | 28g | **36%** |
| Saturated Fat | 5g | **25%** | 10g | **50%** |
| *Trans* Fat | 0g | | 0g | |
| Polyunsaturated Fat | 3g | | 5g | |
| Monounsaturated Fat | 6g | | 11g | |
| **Cholesterol** | 0mg | **0%** | 0mg | **0%** |
| **Sodium** | 390mg | **17%** | 780mg | **35%** |
| **Total Carb.** | 7g | **3%** | 14g | **5%** |
| Dietary Fiber | 2g | **7%** | 4g | **14%** |
| Total Sugars | 0g | | <1g | |
| Incl.Added Sugars | 0g | **0%** | 0g | **0%** |
| **Protein** | 20g | **40%** | 40g | **80%** |
| Vitamin D | 0mcg | 0% | 0mcg | 0% |
| Calcium | 100mg | 8% | 200mg | 15% |
| Iron | 4mg | 20% | 8.1mg | 45% |
| Potassium | 330mg | 6% | 650mg | 15% |
| Niacin | 4.7mg NE | 30% | 9.4mg NE | 60% |
| Vitamin B6 | 0.3mg | 15% | 0.6mg | 35% |
| Vitamin B12 | 2.4mcg | 100% | 4.8mcg | 200% |
| Pantothenic Acid | 0.5mg | 10% | 1mg | 20% |
| Zinc | 4.6mg | 40% | 9.2mg | 80% |

* The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

21.    The practice is the same for all Beyond Meat Products. For example:

i.    **Beyond Meat Jerky**



| Nutrition Facts | |
|---|---|
| 1.0 About servings per container | |
| **Serving size** | |
| Amount per serving | |
| **Calories** | **90** |
| | % Daily value* |
| **Total Fat** 2g | **3%** |
| Saturated Fat 0.5g | **3%** |
| Trans Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 500mg | **22%** |
| **Total Carbohydrate** 8g | **3%** |
| Dietary Fiber 1g | **4%** |
| Sugar 5g | |
| **Protein** 10g | **15%** |
| Calcium 20mg | 2% |
| Iron 1.8mg | 10% |
| Potassium 100mg | 2% |
| Vitamin D 0mcg | 0% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

    ii.    **Beyond Breakfast Sausage Links**



## Nutrition Facts

3 servings per container
**Serving size  2 cooked patties (58g)**

**Amount per serving**

## Calories        180

| | % Daily Value* |
|---|---|
| **Total Fat** 12g | 15% |
| Saturated Fat 4.5g | 23% |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 270mg | 12% |
| **Total Carbohydrate** 6g | 2% |
| Dietary Fiber 2g | 7% |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 11g | 22% |
| Vitamin D 0mcg | 0% |
| Calcium 60mg | 4% |
| Iron 2.8mg | 15% |
| Potassium 230mg | 5% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories in a day is used for general nutrition advice.

iii.    **Beyond Beef Crumbles**



22.    According to the FDA, the % Daily Value (%DV) "is the percentage of the Daily Value for each nutrient in a serving of the food. The Daily Values are reference amounts (expressed in grams, milligrams, or micrograms) or nutrients to consume or not to exceed each day. The %DV shows how much a nutrient in a serving of food contributes to a total daily diet. The %DV helps you determine if a food is high or low in a nutrient."[17]

---

[17] *How to Understand and Use the Nutrition Facts Label,* U.S. Food & Drug Administration, https://www.fda.gov/food/new-nutrition-facts-label/how-understand-and-use-nutrition-facts-label#:~:text=The%20Daily%20Values%20are%20reference,to%20a%20total%20daily%20diet (last updated Feb. 25, 2022).

23.    The United States Food and Drug Administration ("FDA") governs the nutritional labeling of food, pursuant to the Food, Drug, and Cosmetics Act, 21 C.F.R. § 101.9(c)(7) ("FDCA") and the Nutrition Labeling and Education Act of 1990.

24.    Under the FDCA, manufacturers must publish a product's protein content on its nutritional label as "[a] statement of the number of grams of protein in a serving." FDCA § 101.9(c)(7).

25.    Under the FDCA, in most circumstances, "[p]rotein content may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International,' *except when official AOAC procedures described in this paragraph . . . require* [another] *factor. Id.* (emphasis added).

26.    Protein quality is subject to such heightened testing requirements under the FDCA, and requires that "[t]he corrected amount of protein (gram) per serving for foods represented or purported for adults and children 1 or more years of age is equal to the actual amount of protein (gram) per serving multiplied by the amino acid score *corrected for protein digestibility*. . . The protein digestibility-correct amino acid score shall be determined by methods given . . . in 'Report of the Joint FAO/WHO Expert Consultation on Protein

18

Quality Evaluation' except that when official AOAC procedures described in paragraph (c)(7) of this section require a specific factor other than 6.25, that specific factor shall be used." *Id.* (selected internal quotations omitted). This kind of testing is referred to as the Protein Digestibility Amino Acid Corrected Score ("PDCAAS").

27. Thus, the FDCA requires that for any product making a protein claim—such as those prominently displayed on the front packaging of the Products—it must also contain a statement of the protein content of the %DV calculated using the PDCAAS. *See* 21 C.F.R. § 101.9(c)(7)(ii). In other words, while the Product may advertise the raw protein content calculated using the less-rigorous nitrogen method (such as the Beyond Burger's prominent claim that "This Product Contains 20G of Plant-Based Protein"), it is *also* required to state the protein content as a percentage of the Daily Value using the more rigorous PDCAAS method. *Id.*

28. Beyond Meat does not comply with these requirements. Beyond Meat not only overstates the actual protein amount in its Products, but also inflates the %DV levels on the labels by failing to use the required PDCAAS score in its calculation. Instead, Beyond Meat calculates the %DV of its protein based on the simple nitrogen method. The problem with this, especially as it relates to the Products, is that plant-based proteins have a

substantially lower PDCAAS score. While the PDCAAS score of traditional beef is .92 out of 1, the average PDCAAS scores of Beyond Meat's Beef Crumbles and Beyond Burger are .645 and .8875, respectively.[18] The table below also shows PDCAAS scores of various sources of protein.[19]

| Source | PDCAAS |
| --- | --- |
| Milk | 1.00 |
| Whey | 1.00 |
| Egg | 1.00 |
| Soy protein isolate | 1.00 |
| Casein | 1.00 |
| Beef | 0.92 |
| Soy | 0.91 |
| Pea | 0.67 |
| Oat | 0.57 |
| Whole wheat | 0.45 |

Thus, each serving of the Product actually contains less digestable protein than advertised, and in order to achieve the actual listed %DV, consumers will need to consume more than the listed serving size.

29.    Due to this incorrect method of calculation failing to reflect the required PDCAAS score, upon information and belief, the %DV of protein in the Products – or the percentage of the necessary daily protein the customer expects to receive by consuming one serving size of the Product – is

---

[18] Jay R. Hoffman & Michael J. Falvo, *Protein – Which is Best?,* 3 J. Sports Sci. Med. 118 (2004), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3905294/.

[19] Stephan van Vliet, Nicholas A Burd & Luc J C van Loon, *The Skeletal Muscle Anabolic Response to Plant- versus Animal-Based Protein Consumption*, Journal of Nutrition (2015), https://pubmed.ncbi.nlm.nih.gov/26224750/

substantially lower than what is advertised on the packaging. Because of this misrepresentation, Consumers are led to believe that the Products provide more protein that they actually provide.

30.    Beyond Meat had a duty to ensure that the Products lived up to its representations about their content of protein. As such, Beyond Meat knew or should have known that the Products had substantially less protein, both in raw amounts and as %DV than was advertised on the Products' labels, packaging, advertising, and statements.

31.    Beyond Meat specifically represents that "our products deliver greater or equal levels of protein than their animal-based counterparts."[20] This statement is explicitly false, due to the difference in advertised %DV of protein and the actual protein content of the Products.

32.    However, Beyond Meat made these false representations, knowing that the claimed composition of the Products (as well as the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider in selecting a Beyond Meat Product over a competing product. By negligently and/or deceptively representing, marketing, and advertising the Products as containing "greater or equal levels

---

[20] *Frequently Asked Questions*, Beyond Meat, (last visited June 8, 2022) https://web.archive.org/web/20170523074518/https://www.beyondmeat.com/faqs/ (capturing the Beyond Meat website on May 23, 2017).

of protein than their animal-based counterparts" and/or the amount of protein advertised as a percentage of Daily Value, Beyond Meat wrongfully capitalized on, and reaped enormous profits from, consumers' preference for high-protein, plant-based foods.

33.     Indeed, Plaintiffs were misled by these false representations. Both Plaintiffs DeLoss and Zakinov purchased the Products based in part on Beyond Meat's advertisements of the amount of protein the Products provide as well as the quality of their protein. If the Plaintiffs had been aware that the Products did not contain the advertised quantity or quality of protein, they would not have purchased or paid as much for the Products.

### C.     Beyond Meat Represents the Products as "All Natural," and Containing Only "Organic" or "Non-Synthetic" Ingredients Despite Knowing the Products Contain Synthetic Ingredients

34.     During the Class Period, Beyond Meat held itself out as making products that were "all-natural," "organic," or containing no "synthetic" ingredients.[21]

35.     In interviews, CEO Ethan Brown has said that the Products contain "nothing artificial" and that the company is committed to using "no artificial

---

[21] *See e.g.*, Starostinetskaya, *supra* note 8.

ingredients."[22] He further stated that Beyond Meat's "commitment to all natural
and non-GMO ingredient is the core of [their] company."[23]

36.    In fact, from at least September 2020 to May 2021, Beyond Meat
specifically stated that its Products did not contain "synthetically produced
ingredients."

**WHAT IS BEYOND MEAT® MADE OUT OF?**

Our ingredients are simple and made from plants – without GMOs or synthetically produced ingredients.
Beyond Meat sources proteins, fats, minerals, flavors and colors, and carbohydrates from plant-based
sources like peas, beans, potatoes and brown rice. More on Beyond Meat's ingredients here.

37.    However, the current Beyond Meat website backtracks on that
promise.[24]

**WHAT IS BEYOND MEAT® MADE OUT OF?**                                                    ▲

We start with simple plant-based, non-GMO ingredients. Beyond Meat sources proteins, fats, minerals, flavors and colors, and
carbohydrates from plant-based sources like peas, beans, potatoes and brown rice. More on Beyond Meat's ingredients here.

---

[22] https://www.bloomberg.com/opinion/articles/2020-06-11/beyond-meat-bynd-ceo-ethan-brown-talks-growth-eating-trends#xj4y7vzkg;
https://www.cnbc.com/2020/05/06/beyond-meat-ceo-looks-to-win-consumers-over-during-meat-shortage.html; Sully Barrett, *How the Impossible Burger is Changing the Debate Over GMO Foods,* CNBC (Feb. 13, 2020)
https://www.cnbc.com/2020/02/13/how-the-impossible-burger-is-changing-the-debate-over-gmo-foods.html#:~:text=One%20difference%20is%20Impossible's%20use,investors%20have%20weighed%20the%20risks (emphasis added).

[23] Beyond Meat, Beyond Meat Opens Doors of New State-of-the-Art Innovation Center in Los Angeles, Expanding Research Footprint and Fueling Progress Toward a Perfect Build of Meat Directly from Plants, https://investors.beyondmeat.com/news-releases/news-release-details/beyond-meat-opens-doors-new-state-art-innovation-center-los. (last visited June 8, 2022)

[24] *Frequently Asked Questions,* Beyond Meat (last visited June 8, 2022), https://www.beyondmeat.com/en-US/faqs.

38.    Far from remaining committed to its claim that the Products do not contain synthetically produced ingredients, the Beyond Meat "Ingredients" webpage now discloses that one of its ingredients is methylcellulose.[25]



39.    Methylcellulose is a synthetically made filler used in processed foods as a cheap additive that allows food manufacturers increase weight and add texture without adding nutritional benefits. Methylcellulose is literally a synthetically modified form of cellulose "used as a bulk-forming and stool-softening agent for treatment of constipation."[26] It is a chemical compound

---

[25]    *Our Ingredients,* Beyond Meat (last visited June 8, 2022), https://www.beyondmeat.com/en-US/about/our-ingredients/.

[26]    *Methylcellulose,* ScienceDirect (last visited June 8, 2022), https://www.sciencedirect.com/topics/nursing-and-health-professions/methylcellulose (summarizing Keith Hillier, *xPharm: The Comprehensive Pharmacology Reference* (2007)).

24

synthesized from treating vegetable cellulose with a chemical agent and treating it with methyl chloride.[27] It is not naturally occurring.[28]

40.    Until recently, Beyond Meat failed to disclose the existence of this not natural, inorganic, synthetic compound in any of its advertising, marketing, or packaging for the Products. Beyond Meat's averments on its website, in advertisements, and in corporate statements about the natural quality of its ingredients are not only misleading, but they are also demonstrably false. In 2020, a spokesperson for Beyond Meat confirmed that methylcellulose was an ingredient in its burger patties but would not give an exact gram amount.[29]

41.    Beyond Meat had a duty to ensure that its Products lived up to these representations and marketing positioning as Products that were "natural," "organic," or containing "no synthetic ingredients." Beyond Meat knew or should have known that the Products included non-natural, artificial, inorganic, synthetic methylcellulose, and that the presence of methylcellulose did not conform to the Products' labels, packaging, advertising, and statements. Beyond Meat also had a duty to disclose any ingredients that would impact consumers' decisions to

---

[27] Devabaktuni Lavany et al., *Sources of Cellulose and Their Applications – A Review*, 2 INT'L J. DRUG FORMULATION & RSCH.19, 30 (2011) (emphasis added).
[28] *Id.*
[29] Erica Chayes Wida, *Do Impossible and Beyond Meat Burgers Really Contain Laxatives?,* TODAY (Feb. 4, 2020) https://www.today.com/food/do-impossible-beyond-meat-burgers-really-contain-laxatives-t173061.

purchase, such as the existence of a non-natural, artificial, and synthetic filler such as methylcellulose. Beyond Meat's omission induced the Plaintiffs and the Classes to purchase or pay more for the Products that they otherwise would have if they had known about the non-natural, artificial, inorganic, synthetic ingredient in the Products.

42.    Based on the omission and false representations of the quality of, and ingredients in, its Products, Beyond Meat led the consumers to purchase the Products, knowing that the claimed make-up of the Products (as well as the other false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking Beyond Meat Products instead of competing products. The consumers who chose Beyond Meat Products paid more than what they would have because they believed that the Products were indeed provided high levels of healthy protein and were natural with no artificial ingredients. By negligently and/or deceptively representing, marketing, and advertising the Products as natural, organic, and containing no synthetic ingredients, Beyond Meat wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for organic and synthetic-free products.

43.    Indeed, Plaintiffs were misled by these false representations. Both Plaintiffs DeLoss and Zakinov purchased the Products based in part on Beyond Meat's advertisements of the nature of their ingredients and the statement that they

were "all natural," "organic," and did not contain synthetic ingredients. If Plaintiffs had been aware that the Products did not contain only natural, organic, non-synthetic ingredients, they would not have purchased or paid as much for the Products.

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

> All persons in the United States who, from June 9, 2019 to the present, purchased the Beyond Meat Products for personal use and not for resale ("Class").

45.    Plaintiff DeLoss brings this action individually and on behalf of the following Illinois Subclass:

> All persons who are citizens of the State of Illinois who, from June 9, 2019 to the present, purchased the Beyond Meat Products for personal use and not for resale ("Illinois Subclass").

46.    Plaintiffs Zakinov bring this action individually and on behalf of the following California Subclass:

> All persons who are citizens of the State of California who, from June 9, 2019 to the present, purchased the Beyond Meat Products for personal use and not for resale ("California Subclass").

47.    Excluded from the Class and Subclasses are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal

27

representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

48.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable. Purchasers of the Beyond Meat Products can identify their purchases through receipts, store rewards programs, and their own testimony.

49.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and Court.

50.     Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

      a.  Whether Beyond Meat's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

      b.  Whether Beyond Meat made deceptive or misleading statements that reasonable consumers were likely to rely upon to their detriment;

c.  Whether Beyond Meat had knowledge that those representations were false, deceptive, and misleading;

d.  Whether Beyond Meat continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

e.  Whether a representation that a product contains a stated amount of protein and contains only natural, organic, or non-synthetic ingredients is material to a reasonable consumer;

f.  Whether Beyond Meat violated the laws of the State of California;

g.  Whether Beyond Meat violated the laws of the State of Illinois;

h.  Whether Beyond Meat breached its express warranties;

i.  Whether Beyond Meat breached its implied warranties;

j.  Whether Beyond Meat engaged in unfair trade practices;

k.  Whether Beyond Meat engaged in false advertising;

l.  Whether Beyond Meat made negligent and/or fraudulent misrepresentations and/or omissions;

m. Whether Plaintiffs and members of the Classes did not receive the benefit of their bargain when purchasing the Products;

29

n.  Whether Plaintiffs and members of the Classes are entitled to actual, statutory, and punitive damages; and

o.  Whether Plaintiffs and members of the Classes are entitled to declaratory and injunctive relief.

51.  Beyond Meat engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

52.  Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Beyond Meat's conduct.

53.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

54.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

55.    Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

56.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF
### COUNT I
**Breach of Express Warranty Against Defendants
on Behalf of the Class (or, alternatively, the State Subclasses)**

57.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

58.    Beyond Meat marketed and sold the Products into the stream of commerce with the intent that the Products would be purchased by Plaintiffs and the Class.

59.    Beyond Meat expressly warranted, advertised, and represented to Plaintiffs and the Class that its Products:

    a.   contain the %DV of protein advertised on the packaging;

    b.   use all-natural ingredients;

    c.   are made without "artificial" ingredients; and

    d.   are made without "synthetic" ingredients

60.    Beyond Meat made these express warranties regarding the Products' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Products' packaging and

31

labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Products.

61.    Beyond Meat's advertisements, warranties, and representations were made in connection with the sale of the Products to Plaintiffs and the Class. Plaintiffs and the Class relied on Beyond Meat's advertisements, warranties, and representations regarding the Products in deciding whether to purchase the Products.

62.    The Products do not conform to Beyond Meat's advertisements, warranties and representations in that they:

    a.  contain a substantially lower %DV of protein than advertised on the packaging;

    b.  are made with ingredients that are not natural;

    c.  are made with artificial ingredients; and

    d.  are made with synthetic ingredients.

63.    Beyond Meat was on notice of this breach as it was aware of the inaccurate %DV of protein in the Products and because it was aware of the presence of non-natural, artificial, and synthetic ingredients such as methylcellulose in the Products.

64.    Privity exists because Beyond Meat expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and

32

labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, are not made with artificial ingredients, and are not made with synthetic ingredients.

65.    As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and they would not have purchased at all had they known of the true content of protein, and the nature and quality of ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

66.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Beyond Meat's failure to deliver goods conforming to its express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)

67.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

68.    Beyond Meat is a merchant engaging in the sale of goods to Plaintiffs and the Class.

33

69.     There was a sale of goods from Beyond Meat to Plaintiffs and the Class.

70.     At all times mentioned herein, Beyond Meat manufactured or supplied the Products, and prior to the time the Products were purchased by Plaintiffs and the Class, Beyond Meat impliedly warranted to them that the Products were of merchantable quality, fit for their ordinary use. Beyond Meat breached the implied warranties of merchantability by failing to provide merchantable goods because the Products do not contain the %DV of protein advertised, and therefore Plaintiffs are unable to consume the amount of stated %DV of protein. In other words, a person seeking to intake the amount of protein identified on the label by consuming the Products cannot in fact consume the identified amount of protein. Therefore, the Products are not merchantable or fit for their ordinary purposes.

71.     Not only did the Products not contain the %DV of protein advertised on the packaging, but also they failed to conform to Beyond Meat's promise that the Products use all-natural ingredients and contain no artificial and/or synthetic ingredients. Plaintiffs and the Class relied on Beyond Meat's labels, promises, and affirmations of fact when they purchased the Products.

72.     Beyond Meat breached its implied warranties by selling Products that failed to conform to the promises or affirmations of fact made on the container or

34

label as each product did not contain the %DV of protein advertised on the packaging, in addition to other representations regarding all natural and no artificial or synthetic ingredients.

73.    Beyond Meat was on notice of this breach, as it is aware of the protein quantity in the Products, as well as the full list of ingredients used in its Products including methylcellulose.

74.    Privity exists because Beyond Meat impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Products contained the %DV of protein advertised on the packaging, are made with all-natural ingredients, were not made with artificial ingredients, and were not made with synthetic ingredients

75.    As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Product that is worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

76.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief

available thereunder for Beyond Meat's failure to deliver goods conforming to

their implied warranties and resulting breach.

## COUNT III
### Fraudulent Misrepresentation Against Defendants on Behalf of the Class
### (or, alternatively, the State Subclasses)

77.    Plaintiffs incorporate by reference and reallege each and every

allegation contained above, as though fully set forth herein.

78.    Beyond Meat falsely represented to Plaintiffs and the Class that its

Products:

    a.    contain the %DV of protein advertised on the packaging;

    b.    are made only from "natural" ingredients;

    c.    are made without "artificial" ingredients; and

    d.    are made without "synthetic" ingredients.

79.    Beyond Meat intentionally, knowingly, and recklessly made these

misrepresentations to induce Plaintiffs and the Class to purchase its Products.

80.    Beyond Meat knew that its representations about the Products were

false in that the Products did not contain the %DV of protein advertised on the

packaging, did not contain all-natural ingredients, and contained artificial and/or

synthetic ingredients. Beyond Meat allowed its packaging, labels, advertisements,

promotional materials, and websites to intentionally mislead consumers, such as

Plaintiffs and the Class.

81.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Beyond Meat advertised, represented, and otherwise promoted the Products, Plaintiffs' and the Class's reliance on Beyond Meat's misrepresentations was justifiable.

82.     As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

83.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV
## Fraud by Omission Against Defendants on Behalf of the Class
### (or, alternatively, the State Subclasses)

84.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

85.     Beyond Meat concealed from and failed to disclose to Plaintiffs and the Class that its Products did not contain the %DV of protein advertised on the

packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients that do not conform to the Products' labels, packaging, advertising, and statements.

86.    Beyond Meat was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Products because: (1) Beyond Meat was in a superior position to know the true state of facts about the Products; (2) Beyond Meat was in a superior position to know the actual ingredients, characteristics, and suitability of the Products; and (3) Beyond Meat knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

87.    The facts concealed or not disclosed by Beyond Meat to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products.

88.    Plaintiffs and the Class justifiably relied on Beyond Meat's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which is inferior when compared to how the Products are advertised and represented by Beyond Meat.

89.    As a direct and proximate result of Beyond Meat's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that

were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

90.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT V
**Negligent Misrepresentation Against Defendants on Behalf of the Class (or, alternatively, the State Subclasses)**

91.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

92.    Beyond Meat had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Products.

93.    Beyond Meat breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling Products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Beyond Meat and by failing to promptly remove the Products from the marketplace or to take other appropriate remedial action.

94.    Beyond Meat knew or should have known that the ingredients, qualities, and characteristics of the Products were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Beyond Meat. Specifically, Beyond Meat knew or should have known that: (1) the Products did not contain the %DV of protein as advertised on the packaging; (2) the Products did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients because they contained methylcellulose, and/or other ingredients or contaminants that do not conform to the packaging; and (4) the Products were otherwise not as warranted and represented by Beyond Meat.

95.    As a direct and proximate result of Beyond Meat conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Products that were worth less than the price they paid and that they would not have purchased at all had they known of the true nature and quantity of the protein and ingredients in the Products that do not conform to the Products' labels, packaging, advertising, and statements.

96.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VI
## Unjust Enrichment Against Defendants on Behalf of the Class
### (or, alternatively, the State Subclasses)

97.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

98.    Substantial benefits have been conferred on Beyond Meat by Plaintiffs and the Class through the purchase of the Products. Beyond Meat knowingly and willingly accepted and enjoyed these benefits.

99.    Beyond Meat either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Products would have the qualities, characteristics, and ingredients represented and warranted by Beyond Meat. As such, it would be inequitable for Beyond Meat to retain the benefit of the payments under these circumstances.

100.    Beyond Meat's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Beyond Meat to retain the benefits without payment of the value to Plaintiffs and the Class.

101.    Plaintiffs and the Class are entitled to recover from Beyond Meat all amounts wrongfully collected and improperly retained by Beyond Meat, plus interest thereon.

102. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VII
### Violation of California's Consumer Legal Remedies Act, California Civil Code §§1750, *et Seq.*, Against Defendants on Behalf of the Class
### (or, alternatively, the California Subclass)

103. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

104. Plaintiffs and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

105. The Products are "goods," as that term is defined in California Civil Code section 1761(a).

106. Beyond Meat is a "person" as that term is defined in California Civil Code section 1761(c).

107. Plaintiffs' and each proposed Class member's purchase of the Products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

108. Beyond Meat's conduct alleged herein violated the following provisions of California's Consumer Legal Remedies Act ("CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Products:

    i.    Contain the %DV of protein advertised on the packaging;

    ii.    Are made only from "natural" ingredients;

    iii.    Are made without "artificial" ingredients; and

    iv.    Are made without "synthetic" ingredients

(b)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Products are made only from natural ingredients, and are made without artificial or synthetic ingredients by failing to make any mention of methylcellulose in the Products;

(c)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Products were of a particular standard, quality, or grade, when they were of another;

(d)    California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Products with intent not to sell them as advertised; and

(e)    California Civil Code section 1770(a)(16), by representing that the Products have been supplied in accordance with previous representations when they have not.

109.   As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Beyond Meat is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

110.   Plaintiffs seek an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT VIII
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *Et Seq*., Against Defendants on Behalf of the Class (or, alternatively, the California Subclass)**

111.   Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

113.   As set forth herein, Beyond Meat's claims that the Products contain the advertised %DV of protein, are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients are literally false and likely to deceive the public.

114.   Beyond Meat's claims that the Products are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients are untrue or

misleading, as is failing to disclose an accurate %DV of protein as required by the FDCA.

115.    Beyond Meat knew, or reasonably should have known, that all these claims were untrue or misleading.

116.    Beyond Meat's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these Products in the future if they can be assured that, so long as the Products contain the advertised %DV of protein, and are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients and/or any other ingredients or contaminants that do not conform to the packaging claims.

117.    Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

### COUNT IX
**Violation of the Unfair Competition Law, California Business & Professions Code §§17200, Et Seq., Against Defendants on Behalf of the Class**
**(or, alternatively, the California Subclass)**

118.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

119.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

120.   Beyond Meat's statements that the Products contain the advertised %DV of protein, are made from all-natural ingredients, and do not contain artificial and/or synthetic ingredients literally false and likely to deceive the public.

**Unlawful**

121.   As alleged herein, Beyond Meat has advertised the Products with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

(a)   The CLRA, California Business & Professions Code sections 1750, *et seq*.; and

(b)   The False Advertising Law, California Business & Professions Code sections 17500, *et seq*.

**Unfair**

122.   Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

123.   Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the FDCA.

124.   Beyond Meat's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one the consumers themselves can reasonably avoid.

125.   In accordance with California Business & Professions Code section 17203, Plaintiffs and the Class seek an order enjoining Beyond Meat from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

126.   On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale the Products, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

**COUNT X**

**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*., Against Beyond Meats on Behalf of the Class**
**(or, alternatively, the Illinois Subclass)**

127.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

128.    The conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*. ("ICFA").

129.    Beyond Meat engaged in a deceptive act or practice in violation of ICFA by knowingly misrepresenting, concealing, or failing to disclose the Products' true quality, ingredients, and suitability.

130.    Specifically, Beyond Meat falsely claims, on both its labels and its websites, that its Products:

(a) contain the %DV of protein advertised on the packaging;

(b) are made only from "natural" ingredients;

(c) are made without "artificial" ingredients; and

(d) are made without "synthetic" ingredients.

131.    Beyond Meat's deceptive acts and practices are continuing.

132.  Beyond Meat intended for Plaintiffs and the Class members to rely on and accept as true these advertisements and representations in deciding whether to purchase the Products, and at what price.

133.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive consumers with respect to the Products' quality, ingredients, and suitability for consumption.

134.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive conduct were likely to cause consumers to purchase and/or overpay for the Products.

135.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive acts occurred before Plaintiffs and the Class decided to purchase the Products.

136.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive Plaintiffs and the Class with respect to the Products' quality, ingredients, and suitability for consumption.

137.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive conduct did in fact deceive and cause Plaintiff and the Class members to purchase and/or overpay for the Products.

138.  Beyond Meat's misrepresentations, concealment, omissions, and other deceptive conduct described herein repeatedly occurred in Beyond Meat's

trade or business and were capable of deceiving a substantial portion of the consuming public.

139.   The facts misrepresented, concealed, or not disclosed by Beyond Meats with respect to quantity of quality of protein or other ingredients that do not conform to the labels, packaging, advertising, warranties, and statements are material facts because Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Products, and at what price.

140.   If Plaintiffs and the Class members had known that the Products did not in fact match the quality and ingredients described above, they would not have paid much for the Products.

141.   If Plaintiffs and the Class members had known that the Products did not in fact match the quality and ingredients described above, they would not have purchased the Products at all.

142.   As a result of Beyond Meat's conduct, Plaintiffs and the Class members have suffered actual damages, in that they purchased the Products at a price far greater than they would have paid if they had knowledge that the Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients, other

ingredients that do not conform to the labels, packaging, advertising, warranties, and statements in the Products.

143.   As a result of Beyond Meat's conduct, Plaintiffs and the Class members have suffered actual damages, in that they purchased the Products that they would not have purchased at all if they had knowledge that the Products did not contain the %DV of protein advertised on the packaging, did not contain all-natural ingredients, and contained artificial and/or synthetic ingredients, or other ingredients that do not conform to the labels, packaging, advertising, warranties, and statements in the Products.

144.   As a direct and proximate result of the deceptive, misleading, unfair, and unconscionable practices of the Beyond Meat set forth above, Plaintiffs and the Class members are entitled to actual damages, compensatory damages, penalties, attorneys' fees, and costs, as set forth in Section 10a of the ICFA.

145.   Beyond Meat's deceptive, misleading, unfair, and unconscionable practices set forth above were done willfully, wantonly, and maliciously, entitling Plaintiffs and the Class members to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against Beyond Meat as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Beyond Meat to bear the costs of class notice;

B.    An order enjoining Beyond Meat from selling the Products in any manner suggesting or implying that they are all-natural, or do not contain artificial or synthetic ingredients;

C.    An order requiring Beyond Meat to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing Products;

D.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Beyond Meat from continuing the unlawful practices alleged herein, and injunctive relief to remedy Beyond Meat's past conduct;

E.    An order requiring Beyond Meat to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

F.    An order requiring Beyond Meat to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G.    An order requiring Beyond Meat to pay all actual and statutory damages permitted under the counts alleged herein;

H.    An order requiring Beyond Meat to pay punitive damages on any count so allowable;

I.    An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

J.    An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: June 28, 2022                **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**


By:  s/  Rebecca A. Peterson
Robert K. Shelquist
Rebecca A. Peterson (241858)
100 Washington Ave S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
            rapeterson@locklaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GUSTAFSON GLUEK PLLC**
Dennis Stewart (99152)
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299
Facsimile: (612) 339-6622
E-mail: dstewart@gustafsongluek.com

**GUSTAFSON GLUEK, PLLC**
Daniel E. Gustafson
Catherine Sung-Yun K. Smith
Daniel J. Nordin
Anthony J. Stauber
Canadian Pacific Plaza
120 S. 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
dnordin@gustafsongluek.com
tstauber@gustafsongluek.com

**WEXLER BOLEY & ELGERSMA LLP**
Kenneth A. Wexler
Kara A. Elgersma
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: kaw@wbe-llp.com
kae@wbe-llp.com

**MORRIS KANDINOV LLP**
Leonid Kandinov (279650)
550 West B Street, 4th Floor
San Diego, CA 92101
Telephone: (619) 780-3993
E-mail: leo@moka.law

54

**SALTZ, MONGELUZZI & BENDESKY, P.C.**
Simon B. Paris, Esq.
Patrick Howard, Esq.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3895
E-mail: sparis@smbb.com
          phoward@smbb.com

**STEPHENS & STEPHENS, LLP**
Conrad B. Stephens
518 E. Main St.
Santa Maria, CA 93454
Telephone: (805) 922-1951
Facsimile: (805) 922-8013
Email: conrad@stephensfirm.com

***Attorneys for Plaintiffs***